United States Court of Appeals for the Ninth Circuit is now in session. Good morning, counsel. Welcome to the Ninth Circuit. Before we go to our first oral argument, I'm going to officially submit two cases. The first is Alfano Enriquez v. Garland. The second is Freelancer International Pty Ltd. v. Upwork Global. Those two cases are now v. Reyes-Rodriguez. I believe, Mr. Rocha, you are representing the appellant, so please proceed. Thank you, Your Honor. Good morning. May it please the court, Juan Rocha on behalf of the defendant in this case. I reserve two minutes for rebuttal. Your Honor, we ask that the court vacate the trial court should have given a jury instruction based on the evidence that was before the court. The court committed plain error by not doing so. There's ample evidence in the record that at least two agents, if not three agents, discussed the issue of derivative citizenship with respect to the defendant in this case, both on direct and cross-examination. It all started with Agent Cap, who testified that he actually took the record of sworn statements and actually was admitted into record that defendant's father was a naturalized United States citizen. Counsel, with respect, I see the case very differently than what you're presenting it because didn't your client admit at trial that he was not a U.S. citizen? Yes, Your Honor, that could be the case. Someone could be a not U.S. citizen, but they could still derive. They could still ask for a jury instruction. Did he present any evidence, assuming arguendo, that his father was a naturalized citizen? Did he present any evidence on his residency or age, meaning his residency or age requirements in order to qualify even if his father had been a naturalized citizen at that point? Your Honor, I noted in the opening brief that the testimony that was submitted was sworn, and also the record of sworn statement was introduced. But even if, as I noted in my answer or reply brief, a defendant was not required to present any evidence. That's the Sandoval-Gonzalez case in which this court held that a defendant has no burden to produce evidence. But counsel, there has to be evidence before you get an instruction. And there was, Your Honor, in this case, I don't know whether that's evidence of citizenship. Your Honor, I think that was evidence that was enough to show the court that his theory of defense was derivative citizenship, and he was trying to negate the element of alienage. So there was discussion about his father being a naturalized citizen, which the government never contested. There was also the fact that he was a legal permanent resident. Whether or not he legally met the requirements for a derivative citizen really is not the issue here before the court. Instruction was supposed to be given. There wasn't one offered. That's right. I had defense counsel offer one. I believe in the Margo Piatto case is the instruction he should have requested, in which there's actually at least three ways a person could become a U.S. citizen. One would have been to say, well, there's naturalization and naturally born in the U.S. And then they would have added an instruction as the Margo Piatto case noted, even someone born outside the United States can still be a natural born citizen through a parent, for example. And so that's the instruction that should have been given, but the judge should have done that, given that the government was on notice. What was supposed to be told that it should find? Your Honor, it should have said... Your father is a nationalized citizen. The jury instruction could have been something like, there are three ways a person can become a U.S. citizen. And one of those would have been directing the jury that it's derivative citizenship, and then explain the person can drive that through a parent. And he could have done so in that case, the court could have, and it didn't do that in this case. So is it your position then that your client had no evidentiary burden to number one, indicate why he met the age and other requirements to benefit from his father's naturalization and that he had no burden to propose a jury instruction? Your Honor, well, at least with respect to the Sandoval case, that's correct. The court clearly says in no uncertain terms that he doesn't have a burden, but in this case, he does not, you say? That's right. He says he has no burden because it's not an affirmative defense. So that's what Sandoval court says. No, that has nothing to do with being an affirmative defense. In this case, he wants to prove something, you may say affirmative in that respect, but the reality is if he wants to show status, he has to show that, does he not? Your Honor, I think through the testimony, that's what was presented through the record of sworn statement that was presented. Those things were not contested. They were admitted into evidence by the government. So that is already some evidence there in the record. So it was more than a scintilla of evidence that the court could have said, okay, well, I'm going to give a suspended jury instruction on this issue. You think there's an evidentiary foundation upon which the jury find that the defendant had derivative citizenship just on the basis of that? Yes, that's correct. I know that the government cited the, I think it's Spinoza-Baza case, but that case is a 403 issue. And so I suppose that if the government had raised a 403 issue, then yes, of course, there would have been some evidentiary hearing in which maybe there would have been a proper by defense counsel, but that wasn't the case. So that case is not applicable to this case. The government never objected in this case. There was no instruction offered. I don't understand how you can be saying the government should have objected. Your Honor, I believe that's the purpose of a suspended jury instruction is that based on the evidence, the court on its own could have given one to the jury. And by giving the wrong jury instruction, I think it alleviated the government burden of proof in this case, because it only said that there were two ways of doing that. But the testimony clearly shows there was at least three ways a person can become a U.S. citizen. So I think that that's... Counsel, did the record that was in that, you know, this document you said that was put in, that sort of made it so there's not a scintilla, did it talk about when his father became a U.S., a nationalized U.S. citizen or not? No, Your Honor, it didn't. And I know the government in its answer goes into extreme detail about the requirements, but they had all the opportunity in the world to do that at trial. They could have done that through one of its agents and said... No, but I think this goes to, I think your point was that while there's some evidence in the record that would support that, you know, he might have derivative citizenship from his father being a nationalized U.S. citizen, but doesn't it need to be something more than just the bare fact that your father's a nationalized citizen? Don't you need, wouldn't you in theory, even under your as of X date? And therefore, I mean, it just seems like just the bare fact that somebody's father is a nationalized citizen doesn't tell you really anything about whether or not they might have derivative citizenship. Well, Your Honor, I think on the basis of the record here, I think there was more, again, than a scintilla of evidence. Well, what was that? Can you make it clear to me? Other than you've already said that father's a nationalized citizen. Okay. What else is there? Well, there's three agents that testified that a person could become that. They knew that his father was a U.S. citizen. The defendant himself testified yesterday. But that's not really evidence. That's just, I mean, whether they testified to that or not, that's a question of law, whether how you become a U.S., get derivative citizenship. What evidence was there? You know, we've got theories, a little piece of evidence that his father is a nationalized citizen. What other evidence was there that? Your Honor, there wasn't any additional evidence offered by defense counsel, but we believe. Your theory really is that just the bare fact that somebody's father is a nationalized citizen sort of means that you have to give this instruction. That's what your theory. Based on the case I saw here in this search with Juan Bocalato, Sandoval Gonzalez, Messasoria, those are all the cases that say, you know, as long as you have some scintilla of evidence here, more than some, then you could actually. If we have your position, do you want to say anything about the acceptance of responsibility? I, yes, Your Honor. So we believe that the court also erred by not giving my client acceptance of responsibility. There were two bases why the court denied that, and that was because it was untimely and he failed to speak to probation about the pre-sentence investigation. And we believe that that was not a basis to deny him. The case law is clear that a person could, at the 11th hour, even at sentencing, express remorse. And given that he was going to appeal the decision, there could have been some incriminating evidence that would have been prejudicial to him on appeal had he spoken to probation about the circumstances of his case. Your Honor, I have one minute, so I just want to... You want to save that? Okay, very well. Let's hear then from the government. Ms. Chang, please. Thank you, Your Honors. Good morning. May it please the court, my name is Amy Chang, and I'm an assistant U.S. attorney in the District of Arizona. The defendant was removed from this country twice after he was convicted of attempted sexual conduct with a nine-year-old girl and failing to register as a sex offender. He argues for the first time on appeal that despite the overwhelming evidence presented at trial that he was not a U.S. citizen, that the district court somehow should have sua sponte given a jury instruction regarding derivative citizenship, an instruction that he did not request based on a theory of evidence that he did not meaningfully pursue. His argument should be rejected and his conviction and his sentence should be affirmed. And this morning, Your Honors, I just want to address two points that were the bulk of the discussion with my colleague, Mr. Rocha. Even now, defense counsel still seems to equate the fact of his father's, the defendant's father's naturalization with a claim of derivative citizenship. That's the only evidence that he was able to point to in the brief and as well this morning. But as Your Honors have mentioned, evidence of his father's naturalization wasn't enough. Eligibility for derivative citizenship requires a complex inquiry, factual and legal analysis into the timing of his father's naturalization and whether the defendant met the age, residency, and other requirements under the statute. The defendant presented no evidence about any of that. And the absence of that evidence is really striking in this case because the defendant testified. During his testimony, at no point did he say, I am a derivative citizen of the United States. I am a U.S. citizen by virtue of my father's naturalization. And in fact, what he testified was the opposite. The first question that defense counsel asked him was, are you a citizen of the United States? And his answer was no. It's hard to imagine how a district court should have sui sponte defined that his theory of defense was derivative citizenship when he didn't meaningfully pursue it himself. So I think we understand that. Was the fact that he had been previously removed before the jury? Is that an evidence? The fact that he had been previously removed, yes. We've had evidence. One of the agents testified about that prior removal to that he was illegally reentering the country in violation of 1326. The other issue, your honors, that I just want to address briefly is this idea that there has been some kind of burden shifting. And that the defendant, what he's trying to do is read this broad language from Sandoval to mean that he has no burden whatsoever in presenting any evidence related to derivative citizenship. And that the district court is still supposed to serve as some kind of mind reader and instruct the jury regarding that defense. And that just doesn't make any sense in this context. Taken to its logical conclusion, it would mean that every 1326 defendant and really any defendant where in a case where alienage is at issue would be entitled to a sui sponte instruction, even if that defendant has put less in evidence into the record regarding that claim. And that just can't be what this court meant to do in Sandoval. And then finally, I just want to mention that this case highlights a real practical difficulty, which I think Judge Schroeder was getting at. As the court is aware, there are various pathways to derivative citizenship under the different iterations of our immigration law. And so if it's true that the court in this case should have given a derivative citizenship instruction, what instruction would have been appropriate under what theory of eligibility for derivative citizenship? I think that's why we require defendants to propose an instruction or at a very minimum to provide some kind of evidentiary foundation to guide the district court on their theory of eligibility because district courts aren't mind readers. I think it's also just worth noting that there is no model derivative citizenship instruction in this circuit. And I think it's for that very, very reason. Because it's such a fact intensive inquiry. There's so many different pathways to derivative citizenship. It's not a situation where there's a one size fits all instruction that can be applied in every case that a district court could pull off the shelf and plug and play. So I think this case is different from some of the cases that the defendant cites in his brief that might relate to an entrapment defense or some other defense where there is a model instruction. It's just asking too much of our district courts to not only divine based on a few stray comments about his father's naturalization, that his theory of defense is derivative citizenship, but then also on the bench to come up with this precise, accurate language for a theory of eligibility that he really didn't put forth in any meaningful way. Unless the court has any other questions for me. Whether my colleagues have additional questions? Thank you, your honor. Thank you very much. Mr. Rocha, you've got roughly a minute to respond. You're you're a need. Yeah, there we go. Sorry, your honor. So the government just mentioned that they talked about necessity, but again, that's an affirmative defense, which this court has already said, the negation of derivative citizenship is not an affirmative defense. So he was not required to do that. And I quote from the opinion in the handball, where it says, lest there be any further doubt, we now clarify that a criminal defendant faces no burden whatsoever regarding the issue of derivative citizenship in a prosecution for an offense which alienates an element. I mean, that's very clear. It's still the law. And that's what he did. He did present some evidence here to warrant an instruction. So we believe that based on the case law and the government says are not analogous to this case, we obviously disagree because they're on point. It's not like an Espinoza case in which the government, the defendant was trying to sort of link three generations of people to a certain derivative citizen. Here, it was clearly that his father was a citizen. And for those reasons, we asked that the court vacate the conviction and remand this case for a new trial. Very well. Thank you, Mr. Rocha. Do either of my colleagues have additional questions for Mr. Rocha? If not, we thank you both, counsel, for your argument. The case of United States versus Reyes-Rodriguez is submitted.
judges: Schroeder, M. Smith, Vandyke